**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 21-CR-41-JED |
| ) | |
| v. ) | |
| ) | |
| TIMOTHY ALAN LARSON, ) | |
| ) | |
| Defendant. ) | |

**OPINION & ORDER**

Before the Court is Defendant Timothy Larson's Motion for Revocation or Amendment of Pre-Trial Detention Order (Doc. 30), which was filed pursuant to 18 U.S.C. § 3145(b). Defendant seeks to set aside United States Magistrate Judge Christine D. Little's detention order. For the reasons set forth below, the Court denies Defendant's Motion.

**I.   Background**

Sometime at the beginning of this year, Defendant began using the online messaging service known as KIK to message an individual he thought was a minor child. In actuality, Defendant was messaging with a police officer posing as a minor. Over several days, Defendant began a sexual conversation with the undercover officer, requested nude photographs, and, less than two weeks after their first conversation, arranged to meet the undercover officer for sex at a Claremore QuikTrip. During the course of their conversations, the undercover agent asked Defendant if he had condoms, to which Defendant responded, "ugh, I don't have any." (Doc. 31 at 1-2); (Doc. 22 at 7-8).

On February 6, 2021, Defendant arrived at the Claremore QuikTrip to meet the undercover officer, and he was arrested by the Rogers County Sheriff's Department. (Doc. 31 at 2). When the

1

officers arrived on scene to arrest Defendant, they pulled up in an unmarked Ford F-150, which had a light bar attached to its roof. While the officers did activate their lights, Defendant claims that he didn't realize they were police officers at first. He put his car in reverse and drove back approximately five feet before finally stopping after one officer pointed a gun at him. (Doc. 22 at 8-9); (Doc. 31 at 2); (Doc. 30 at 7-8). Further, when the officers arrested Defendant, they found condoms in his possession, despite his earlier statement to the undercover officer that he did not have any condoms. The officers also found personal lube and a bottle of Coca-Cola, an item the undercover officer had asked Defendant to bring. (Doc. 31 at 2); (Doc. 22 at 21). When the officers questioned Defendant,[1] he confirmed that he was, in fact, "Gay Submissive Bottom" and admitted to sending sexual messages to the undercover officer posing as a minor. (Doc. 31 at 2). Defendant told the officers that he was only meeting the minor to help him not make bad choices. (*Id.*).

Defendant was charged by the State of Oklahoma with a felony count of soliciting sexual conduct or communication with a minor by use of technology in violation of Okla. Stat. tit. 21, § 1040.13A. In the state proceeding, the court set Defendant's bond at $50,000 and on the condition that he not have any contact with minors. (Doc. 30 at 2). On February 22, Defendant was indicted in this Court for attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). (Doc. 2). When the U.S. Marshals went to arrest Defendant on his federal charges, they initially planned on waiting outside his residence until he exited—in an attempt to avoid a barricade situation. However, the Marshals felt the need to intervene when they observed what appeared to be an underage male enter Defendant's residence. When the Marshals entered Defendant's residence, they discovered Defendant "engaging in sexual acts with [a] young-looking

---

[1] The parties disagree about whether the officers read Defendant his *Miranda* rights before questioning him. That disagreement is the subject of a suppression motion in front of the Court. (Doc. 25); (Doc. 27).

individual." The "young-looking individual" turned out to be 18 years old, but Defendant was having unprotected sex with the 18-year-old male he met online. (Doc. 22 at 9-10); (Doc. 31 at 2-3). Notably, Defendant had not informed the 18-year-old male that Defendant had been diagnosed with HIV and syphilis. (Doc. 31 at 9); (Doc. 22 at 8). When the Marshals arrived, they seized Defendant's cell phone and sent a message on KIK to "Gay Submissive Bottom" and saw that Defendant's phone "flashed [and] that he had a new message on his KIK app." (Doc. 22 at 10).

While in custody, Probation performed pretrial services interviews with Defendant and his wife. The report indicated that Defendant married his wife, Dalton, in 2012, but that the two were currently separated and living apart, so Defendant was living alone; Defendant was employed as a senior manager with Humana and earned $225,000 a year; Defendant was a veteran, serving in the U.S. Air Force from 1983 until he was honorably discharged in 1992; Defendant had three children in their mid to late 30s[2]; Defendant has regular contact with all his children but none of them live in the area; Defendant's parents are deceased, and he has one living sibling with whom he does not maintain contact; Defendant suffers from blood clots and HIV and is prescribed numerous medications, which he takes as prescribed; Defendant's criminal history is virtually non-existent, with only one arrest in 1985 and a few minor traffic violations; Defendant was diagnosed with depression in 2012 and was prescribed Prozac; Defendant reported recent suicidal ideations, and his wife reported that the more recent suicidal ideations were connected to the instant allegations, mentioning that Defendant expressed a desire to commit suicide-by-cop. Probation ultimately recommended that Defendant be detained pending trial.

---

[2] Defendant only reported having two children, but his wife told Probation that he had three. Defendant's wife was not sure why he wouldn't report all his children, as Defendant maintains regular contact with all of them.

The government filed a Motion for Detention (Doc. 8) on March 30, 2021, Defendant responded on April 9 (Doc. 18), and Judge Little held a hearing on April 9. The government presented its evidence by proffer and noted that Defendant attempted a heinous crime, had substantial resources so he could flee if he wanted to, showed risky behavior while out on bond in the state proceeding, and showed suicidal ideations and expressed an intent to commit suicide-by-cop, and thus there were no conditions that could reasonably assure the appearance of Defendant as required and the safety of any other person and the community. (Doc. 22 at 7-10, 22).

Defendant countered the government's proffers by arguing that Defendant had steady employment, was a veteran, that his limited interactions with the judicial system were only for traffic citations and that he complied with all court directives in all those cases, that he's not dependent on anyone, that he's receiving treatment for his sexually transmitted diseases that they're not transmittable as long as they are under control, that he can afford to be put on electronic monitoring, that the young male discovered at his residence was over 18 and didn't represent any matter of concern for the community at large, and that he is capable of remaining in his residence and making daily contact with Probation, and therefore, the Court could easily impose conditions that would assure Defendant's presence at trial and the safety of the community. (*Id*. at 11-15, 23-24).

At the conclusion of the hearing, Judge Little ordered that Defendant should be detained pending trial and stated the following:

> I conclude the defendant must be detained pending trial because I find by clear and convincing evidence there's no condition or combination of conditions of release that will reasonably assure the safety of another person or the community. And by preponderance of the evidence, that there are no condition or combination of conditions that will reasonably assure the defendant's appearance as required.
>
> The -- with respect to the specific consideration of the factors in light of the facts here, I find the nature and circumstances of the offense charged involve allegations

4

> that the defendant utilized the Kik application to arrange a meeting with a person whom he thought was 14 or 15 years old for sex. It's alleged that he drove to the location of the arranged meeting place with condoms and personal lubrication and had communication through the app about bringing condoms to the meet-up.
>
> The information proffered also indicates that, when officers attempted to block his vehicle in, he attempted to drive away and was allegedly apprehended only after an officer pointed a weapon at him and demanded that he stop.
>
> The defendant does have strong ties to the community and a stable residence where he lives. He also has stable employment and he works from home. However, his employment requires access to Internet capable devices. And there are no conditions of release that will reasonably assure the safety of the community under these circumstances. There's no way to effectively monitor his use of applications or access to devices to -- to engage in conduct similar to the charged offense conduct that's alleged in this case.
>
> The -- I'm also considering the fact that he made an apparent reference to committing suicide by cop. That, combined with his attempt to apparently evade law enforcement at the time of arrest -- arrest, support my finding there are no conditions that will reasonably assure his appearance as required.

(Doc. 22 at 27-29).

Defendant filed a Motion for Revocation or Amendment of Pre-Trial Detention Order (Doc. 30) on May 5, and the government responded on May 12 (Doc. 31). Defendant restates a lot of the same arguments he presented at the hearing in front of Judge Little, but he also presents new evidence and asks that some evidence presented at the hearing be revisited. As to the new evidence, Defendant notes that he was fired from his job. This, Defendant argues, negates any concern that a condition limiting his Internet access will adversely affect his employment. (Doc. 30 at 7). Defendant further notes that, despite his employment termination, he remains financially sound and able to provide for his monthly expenditures.

As to the evidence that needed to be revisited, Defendant first took issue with Judge Little's assertion that Defendant had attempted to evade law enforcement because that assertion was not

supported by the record. Defendant submitted the report of arresting officer Sgt. Wes Jones who stated:

> I activated my emergency lights in my unmarked Ford F150 unit and pulled up to the front of Mr. Larson's vehicle. I exited my vehicle and Mr. Larson put the vehicle in reverse and moved approximately 5 feet. I drew my weapon and commanded Mr. Larson to stop and show me his hands. Mr. Larson slowly began to comply with my commands.

(*Id*.). The statement by Officer Jones, Defendant argues, merely shows that Defendant was startled by an unmarked pickup truck, drove in reverse for approximately 5 feet, and then stopped as soon as he could confirm a police officer was pointing a firearm at him. Defendant also argues that there was no evidence that he attempted to evade federal law enforcement. Regarding his suicidal ideations, Defendant states that he has a long history of tending to his mental health and is willing to continue this long-standing practice as the Court may direct. (*Id*. at 8). Defendant further states that he has long history of tending to his medical health and that he actively treats his HIV infection through the assistance of medical providers. Defendant asserts that "[h]is viral load is managed through medication and regular medical appointments – so much so that his viral load is consistently maintained as an undetectable load." (*Id*.). Defendant concludes by asking the Court to provide conditions of release and revoke Judge Little's detention order.

## II. Discussion

### A. Legal Standard

Pursuant to 18 U.S.C. § 3142, a defendant must be released pending trial unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e). At a hearing, the Court may consider evidence or proffers, and "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the

hearing." *Id.* § 3142(f). "The facts the [Court] uses to support a finding under [§ 3142(e)] that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." *Id*. "The government must prove risk of flight by a preponderance of the evidence." *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, the Court "shall . . . take into account the available information concerning—

> (1) the nature and circumstances of the offense charged. . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

When reviewing a Magistrate Judge's detention order under § 3145, this Court is to conduct a de novo review "and must make an independent determination of the proper pretrial detention or conditions for release." *See Cisneros*, 328 F.3d at 616, n.1 (quoting *United States v. Reuben*, 974 F.2d 580, 585-86 (5th Cir. 1992)); *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019)

(unpublished) (citing *Cisneros*, 328 F.3d at 616, n.1). A hearing is not required under § 3145, although "the court may hold a hearing if it so chooses." *Oaks*, 793 F. App'x at 747.

### B. The Rebuttable Presumption

"Generally, courts apply a presumption in favor of pretrial release." *United States v. Bustamante-Conchas*, 557 F. App'x 803, 805 (10th Cir. 2014) (per curium) (citing 18 U.S.C. § 3142(b)). However, there is a presumption in favor of detention—i.e., that no conditions will reasonably assure the appearance of the defendant and the safety of the community—when the defendant is charged with an offense "involving a minor victim under section . . . 2242." 18 U.S.C. § 3142(e)(3)(E). In the proceedings below, the parties had some disagreement regarding whether the presumption in favor of detention applies here. The government argued that the presumption applied in this case because Defendant's alleged crime "involved a minor victim." Defendant disagreed and argued that his crime did not "involve a minor victim" because he always engaged with an undercover officer posing as a minor.[3]

The phrase "involves a minor child" was added to § 3142 in 2006, when Congress enacted the Adam Walsh Child Protection and Safety Act "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Pub. L. No. 109–248, July 27, 2006, 120 Stat 587. In trying to unravel its meaning and determine whether a case where a defendant is lured by an undercover officer posing as a minor "involves a minor victim," the Court was surprised to find very little authority on this issue. The Tenth Circuit has never addressed the issue, nor has any Court in this district. In its research, the Court only found four cases analyzing

---

[3] Defendant argued against the application of the presumption in his brief before Judge Little. *See* (Doc. 18 at 6-7). But Defendant seemed to change course at his detention hearing. *See* (Doc. 22 at 16-17).

the phrase. Three courts have held that the phrase "involves a minor victim" does encompass cases where a defendant was lured by an undercover officer. *See United States v. Rizzuti*, 611 F. Supp. 2d 967 (E.D. Mo. 2009); *United States v. Lama*, Case No. 3:19-cr-167-J-34MCR, 2021 WL 146905 (M.D. Fla. Jan. 15, 2021); *United States v. Schuetz*, Case No. 12-mj-3046, 2012 WL 3185905 (C.D. Ill. Aug. 2, 2012). On the other hand, one court has held the opposite. *See United States v. Kahn*, 524 F. Supp. 2d 1278 (W.D. Wash. 2007).

*Kahn* was the first court to address this issue. In *Khan*, the defendant was charged with traveling from Canada to Seattle, Washington to engage in illicit sexual conduct with a grown woman and her 13-year-old daughter. However, the grown woman was actually an undercover police officer, and the 13-year-old daughter was fictitious. The government in Kahn argued that the mandatory electronic monitoring condition set forth in 18 U.S.C. § 3142(c)(1)(B) applied because the case "involved a minor victim." The defendant argued the condition of release did not apply because his case involved an undercover officer posing as a minor, and therefore, there was no minor victim. *Id*. at 1279.

The *Kahn* court started by noting that Congress did not define "minor victim," and thus, its "duty" was to "give effect to the intent of Congress." *Id*. at 1282 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). The court then noted that "only if an ambiguity exists in the statute, or when an absurd construction results, does this court refer to the statute's legislative history." *Id*. (quoting *San Jose Christian Coll.*, 360 F.3d at 1034)). Thus, the court reasoned its main task was to construe "minor victim" in accordance with its plain meaning, which it determined could be done with the aid of a dictionary. *Id*. (citing *Cleveland v. City of Los Angeles*, 420 F.3d 981, 989 (9th Cir. 2005)). Because a "minor" is defined as "[a] person who has not reached full legal age" and a "victim" is a "person harmed by a crime, tort, or other wrong,"

9

the *Kahn* court reasoned that "minor victim" meant a "child harmed by a crime." *Id*. (quoting Black's Law Dictionary 1017, 1598 (8th ed. 2004)).

The government argued that because the statute the defendant was charged under, 18 U.S.C. § 2423(b), criminalizes "travel for the purpose of engaging in any illicit sexual conduct with another person," whether or not the victim is a minor or the prohibited conduct actually occurs, *Id*. at 1283 (citing *United States v. Meek*, 366 F.3d 705, 717 (9th Cir. 2004)), the court should apply the same reading to § 3142. The *Khan* court recognized that courts had interpreted § 2423(b) to include cases that did not actually have a minor victim, but reasoned that the statutory language was quite different, ultimately concluding that the defendant's alleged crime did not "involve a minor victim," and that it was unable to depart from the clear statutory text:

> The Court recognizes the numerous changes ushered by the Walsh Act Amendments, and their focus on "protect[ing] children from sexual attacks and other violent crimes." Pub.L. No. 109–248, tit. II, 109 Stat. at 611. However, the drafting of statutory language to carry out prevailing policy preferences is a legislative, not a judicial, function. Because the statutory language at issue today is plain, the sole function of this Court is "to enforce [that language] according to its terms." *Ron Pair Enters., Inc.,* 489 U.S. at 241, 109 S.Ct. 1026. The government advocates the temporary abandonment this deeply-rooted prerogative, and would instead have this Court substitute its judgment for the plain language used by Congress. The Court refuses to do so. *Cf. Day–Brite Lighting, Inc. v. Missouri,* 342 U.S. 421, 423, 72 S.Ct. 405, 96 L.Ed. 469 (1952) (courts "do not sit as ... super-legislature[s]"). Because the result here is not absurd, the plain language controls. *Accord San Jose Christian Coll.,* 360 F.3d at 1034. The mandatory pretrial release conditions of the Walsh Act, including the electronic monitoring condition, do not apply to this case.

*Id*. at 1284.

The phrase was at issue again in *United States v. Rizutti*, 611 F. Supp. 2d 967 (E.D. Mo. 2009). The defendant in *Rizutti* was charged with one count of "knowingly attempt[ing] to persuade, induce, and coerce a police officer, whom [the defendant] believed was under 18 years of age, to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b)," and with possession

10

child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). *Rizzuti*, 611 F. Supp. 2d at 968.

The *Rizzuti* court laid out the reasoning of the *Kahn* court, but ultimately disagreed with its holding:

> This court respectfully disagrees with the conclusion about Congress's intent reached in *Kahn*. The court must consider the words used by Congress to express its intent. *United States v. McCall,* 439 F.3d 967, 971 (8th Cir.2006). When the intent of Congress, expressed in the words of the statute, is clear, it should be given effect. *Id.* The relevant statutory language is "any case that involves a minor victim under section ... 2422...." Congress did not statutorily define "involves a minor victim" as a unit. Of particular importance, however, is the fact that in § 3142(c)(1)(B) Congress included a reference to specific statutes to restrict the application of the mandatory conditions of release provision. By referring specifically to § 2422, Congress included the scope of the illegal activity proscribed by § 2422. *See Dir., Office of Workers' Compensation Programs, U.S. Dep't of Labor v. Peabody Coal Co.,* 554 F.2d 310, 323 (7th Cir.1977) ("Undoubtedly, Congress may employ a general reference when adopting statutory provisions set out in an independent statute."). Section 2422 expressly includes "attempt" activity and has been construed by the Eighth Circuit Court of Appeals, agreeing with the reasoning of sister courts, to include conduct directed by defendants unknowingly at undercover law enforcement officers, if the defendant intended to victimize a person under the age of 18. *United States v. Spurlock,* 495 F.3d 1011, 1013 (8th Cir.2007), *cert. denied,* 552 U.S. 1054, 128 S.Ct. 687, 169 L.Ed.2d 537 (2007) (citing *United States v. Helder,* 452 F.3d 751, 756 (8th Cir.2006)).
>
> Congress's stated intention in requiring the described conditions of release was to ensure "that children have additional protection 'from sexual attacks and other violent crimes.' Pub.L. No. 109–248, tit. II, 109 Stat. at 611." *Gardner,* 523 F.Supp.2d at 1029. More to the point, in 2003, Congress passed the PROTECT Act, 18 U.S.C. § 2252A, aimed at criminalizing the trafficking of child pornography. *United States v. Williams,* 553 U.S. 285, ——, 128 S.Ct. 1830, 1835, 170 L.Ed.2d 650 (2008). In that statute, Congress included the phrase "actual minor" in three different places. 18 U.S.C. §§ 2252A (a)(3)(B)(ii), 2252A (c)(2), 2252A (e). In the Adam Walsh Act, Congress did not use such a phrase. *See* 18 U.S.C. § 3142(c)(1)(B). Mindful that courts have a "duty to refrain from reading a phrase into the statute when Congress has left it out," this court refrains from inserting the word "actual" before the phrase "minor victim" in the Adam Walsh Act. *See Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) *971 ("[W]here Congress includes particular language in one section of a statute but omits it in another [statute within the same title], it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

*Id*. at 970-71.

The Court finds the reasoning in *Rizzuti* more persuasive than the reasoning in *Kahn* and more in line with the stated intent of the Adam Walsh Act. Like the Eighth Circuit, the circuit in which the *Rizzuti* court sat, the Tenth Circuit has also construed § 2422(b) to include conduct directed by defendants unknowingly at undercover law enforcement officers. *United States v. Thomas*, 410 F.3d 1235, 1245 (10th Cir. 2005) ("Thomas was charged with attempt in this case because he could not have actually enticed a minor because his online chats were with an undercover police officer."). Thus, like the *Rizzuti* court, this court also holds that by "referring specifically to § 2422, Congress included the scope of the illegal activity proscribed by § 2422. *Id*. at 970. To construe the phrase as did the *Kahn* court "would result in a situation where two defendants charged with the same crime, and who pose the same danger to children, would be treated differently based solely on how they were apprehended." *Schuetz*, 2012 WL 3185905 *4. Accordingly, this Court holds that the presumption against pretrial release applies in this case because there is probable cause to believe that Defendant committed "an offense involving a minor victim under section . . . 2242." 18 U.S.C. § 3142(e)(3)(E).

C. **Findings and Statement of Reasons**

> Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the disctrict court in determining whether to release or detain.

*United States v. Stricklin*, 932 F.2d 1353, 1354–55 (10th Cir. 1991).

While the presumption does apply in this case, the Court finds that Defendant produced enough evidence to rebut it. As stated above, Defendant's burden is not heavy, and Defendant presented evidence of a stable residence and an ability to pay his bills, despite being terminated from his job. He also presented evidence of a non-existent criminal history and provided the Court

with different examples of conditions he believed would assure his presence at trial and the safety of the community. Thus, the Court will consider the presumption rebutted and consider it along with the four § 3142(g) factors.

The Court has reviewed the transcript and the audio recording of the proceedings before Judge Little, the parties' filings, proffers, and the pretrial services report. Upon consideration of all of the evidence, the Court finds and concludes that the available evidence shows (1) by clear and convincing evidence, that there is no condition or combination of conditions that will reasonably assure the safety of the community, and (2) by a preponderance of the evidence, that there is no condition or combination of conditions that will reasonably assure the defendant's appearance in this Court as required. In making these determinations, the Court has considered, in addition to the rebutted presumption, (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. § 3142(g). The Court will address each in turn.

1. **Nature and Circumstances of the Charged Offense**

The first factor, the nature and circumstances of the charged offense, favors detention. The charged offense is extremely serious as it involves the attempted assault of a minor. Reflecting the seriousness of this charge, a violation of § 2422(b) carries a minimum term of imprisonment of ten years and maximum of life in prison.

The Court also notes that the facts alleged by the government present a particularly disturbing case of enticing a minor. Defendant engaged a person on the messaging app known as KIK. Through the conversations, it became clear that Defendant was intending to engage in sexual acts with the minor without protection, knowing he was infected with HIV and syphilis. Defendant asked for naked pictures of the minor and engaged in graphic descriptions of sexual conduct with

the minor as well. Once the undercover officer posing as a minor asked Defendant if he had condoms, he replied that he did not. Defendant then agreed to meet the minor at QuickTrip. And when he was finally arrested, the police found condoms and personal lube in his possession. Defendant knew he was engaging with someone he believed to be 14 or 15; he indicated he was willing to have sex with that minor without protection, knowing he was infected with multiple sexually transmitted diseases; he actively took the step of buying condoms after the undercover agent asked if he had any; and he went to the agreed meeting location with condoms and lube in tow, indicating that he was ready and willing to have sex with a 14 or 15 year old child that night. All of these facts make the circumstances of Defendant's offense of particular concern to the Court.

### 2. The Weight of the Evidence

The weight of the government's evidence against Defendant is very strong. The entire time the undercover officers were engaging Defendant through KIK, they were communicating with an account called "Gay Submissive Bottom." When Defendant was arrested at the scene, he admitted that he was "Gay Submissive Bottom" and that he was there to meet a minor child. Moreover, as stated above, Defendant also arrived at his meeting with the minor child with condoms and personal lube, after the officers posing as a minor inquired whether Defendant had any condoms. This indicates that Defendant brought the condoms for the sole purpose of having sex with a minor. Finally, when Defendant was arrested by the U.S. Marshals, the Marshals sent a KIK message to "Gay Submissive Bottom" and noticed Defendant's phone light up and a KIK notification appeared on his phone screen. Accordingly, the Court finds that the weight of the evidence favors detention.

### 3. The History and Characteristics of the Defendant

While the Court appreciates that Defendant has virtually no prior criminal history and was honorably discharged from the United States Air Force, there are multiple other issues that are cause for concern. Defendant has lived in Tulsa for 15 years, but at this point, it is hard to see what is tying him to the community—his three children do not live in the area, both his parents are deceased, he has no contact with his only sibling, he is legally separated from his wife, and he recently got fired from his lucrative job as a senior manager at an health insurance company. And based on his past income—$225,000 a year—Defendant seemingly has the resources to flee and nothing keeping him in Tulsa. Further, Defendant has expressed suicidal ideations, including suicide-by-cop. This is extremely concerning to the Court, as Defendant would be required to interact with law enforcement frequently if he were released pending trial.

Finally, Defendant's behavior was extremely reckless after he was released on bond in his state proceeding. While waiting to arrest Defendant on federal charges, officers noticed what appeared to be a young male child enter his residence. The officers entered the residence and found Defendant engaging in unprotected sex with the young male. The officers later learned that the young male was 18 years old, but the young male did not know about Defendant's HIV and syphilis diagnosis. In this regard, the Court agrees with the government that Defendant's "continuing to seek out sex with young individuals while under federal enticement charges, and his decision to have unprotected intercourse without notifying his partner of his diagnoses reflects risk-taking behavior that suggests he remains a danger to the community." (Doc. 31 at 9-10).

### 4. The Danger to the Community

The fourth factor, the danger to the community posed by Defendant, also weighs in favor of detention. The Court is cognizant of the toll which illicit sexual conduct with a minor has taken,

and continues to take, upon the community. It is the cost and the danger posed by the individual who engages in such illegal conduct that informed Congress when it created the statutory presumption of detention in these cases. *See* 18 U.S.C. § 3142(e). Further, Defendant's willingness to meet a minor to engage in sexual intercourse, as well as having unprotected intercourse with an individual barely over the age of consent while he was out on bail in the state case, shows this Court that he is a danger to the community.

### 5. Available Alternatives

Defendant argues that because he lost his job, the Court could restrict his Internet access without affecting his employment. Defendant further argues that a condition of house arrest with daily check-ins by Probation would assure his appearance and the safety of the community. The Court disagrees. Probation can only monitor devices of which it is made aware. Consequently, if a person on pretrial release keeps a device secret, Probation has no way of monitoring that device. Based on the facts recounted above, the Court cannot trust that Defendant will turn over all of his devices to be monitored. Moreover, a condition of house arrest only keeps Defendant from leaving—it does not prevent others from coming to him. Again, based on the facts recounted above, there is no way the Court can guarantee that Defendant will not try to lure a minor to his residence while on house arrest. Finally, because Defendant has expressed a desire to commit suicide-by-cop, the Court does not feel comfortable ordering Defendant to have daily interactions with Probation officers who carry firearms while in the field.

### III. CONCLUSION

Based upon the consideration of all the evidence and the factors set forth in Section 3142(g), the rebuttable presumption under Section 3142(e)(3)(E), and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure the safety of any other person or of the community. The Court further finds by a preponderance of the evidence, that there is no condition or combination of conditions that will reasonably assure Defendant's appearance in this Court as required. Thus, Defendant's Motion for Revocation or Amendment of Pre-Trial Detention Order (Doc. 30) is **denied**.

Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States, or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal to appear in connection with a court proceeding.

SO ORDERED this 2nd day of June, 2021.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT